■ In the Matter of the Arbitration between PHARMACIA & UPJOHN COMPANY et al., Respondents, and ELAN PHARMACEUTICALS, INC., et al., Appellants. [781 NYS2d 95]—

Order and judgment (one paper), Supreme Court, New York County (Carol Edmead, J.), entered January 23, 2004, which granted the petition for a permanent stay of arbitration, unanimously reversed, on the law, with costs and disbursements, and the matter remanded to Supreme Court for a hearing on the issues of whether the parties intended that the exclusionary clause in article 15.3 of the collaboration agreement for disputes involving intellectual property rights applies to the claims asserted by respondents in their demand for arbitration and whether an attempt to resolve the disputes pursuant to articles 15.1 and/or 15.2 is a precondition to arbitration.

In July 2000, petitioner Pharmacia & Upjohn Company and respondent Neuralab Limited entered into a collaboration agreement to combine on an equal basis the parties' resources and efforts in beta secretase research and to find and develop a cure for Alzheimer's disease. Elan Pharmaceuticals became subject to the agreement by assignment from Neuralab of certain rights thereunder. The goal of the collaboration agreement was to locate an inhibitor to block the action of the beta secretase enzyme, a link in the chain of events that ultimately causes Alzheimer's. The collaboration worked well until July 2002 when, according to respondents (Elan), Pfizer announced that it would acquire Pharmacia; at that point, Elan claims, Pharma-

cia's contribution to the collaborative effort began to wane. In July 2003, Elan put Pfizer on notice of its and Pharmacia's purported breaches of the agreement and, by notice dated September 24, 2003, terminated the agreement.

Elan describes the actions of Pharmacia and Pfizer as follows: "It became apparent . . . after the merger . . . Pfizer had no interest in working with Elan pursuant to the terms of the Agreement . . . Pfizer announced to Elan that it wanted a different deal—one where Pfizer completely controlled the beta secretase program, and excluded Elan from the development and commercialization of any new drug. Elan's role would be limited to doing research work for Pfizer for a fee and later a royalty." Pharmacia and Pfizer, as expected, have a different perspective: "Elan was experiencing severe financial difficulties that required it to divest assets. [Elan's] purported termination of the Agreement, and its attempt to seize related intellectual property, occurred in the midst of this financial crisis . . . [Under the Agreement], neither party may use the collaboration's most valuable intellectual property for 10 years [after expiration of the Agreement's research phase on September 28, 2003], absent further agreement . . . If, however, one party properly terminated the Agreement due to the other's material breach, the terminating party could seize for itself exclusive rights to the collaboration's most valuable intellectual property. That is what Elan attempted to do." The parties' efforts to resolve the dispute were unsuccessful.

In December 2003, Elan, citing the purported breaches of the agreement, filed a demand for arbitration with the American Arbitration Association (AAA) seeking money damages and a declaratory judgment that Elan holds an exclusive worldwide license of, among other things, all of Pharmacia's and Pfizer's interest in regulatory approvals, patents, and know-how relating to the subject matter of the collaboration. In seeking the latter relief, Elan cited an article of the agreement that provided that in case of termination by a nonbreaching party due to a material breach by the other party, the former "shall be automatically granted" an exclusive license to the patents and know-how necessary to continue developing and commercializing compounds.

In an addendum to the demand for arbitration Elan listed Pharmacia and Pfizer's breaches as, inter alia, failing to provide access to the "criteria" used by Pfizer to evaluate a compound for further development; "maintain[ing] a separate research program [apart from the collaboration agreement] directed to small molecule inhibition of beta secretase"; and "[u]nilaterally ceas[ing] certain scientific experiments."

Pharmacia and Pfizer thereupon commenced this proceeding against Elan to stay arbitration, contending that Elan failed to comply with certain preconditions to arbitration and that, in any event, the collaboration agreement's arbitration clause excludes disputes involving intellectual property. In opposition, Elan maintained that the demand for arbitration related to Pharmacia and Pfizer's breach of the collaboration agreement and the contractual remedies provided therefor, and not to the ownership, scope or validity of any intellectual property rights. In any event, according to Elan, in accordance with the terms of the arbitration agreement, it is for the arbitrators, not the court, to determine whether the claims are arbitrable. Supreme Court agreed that Elan had failed to comply with the necessary prearbitration procedures and that the agreement to exclude disputes over intellectual property rights rendered the underlying dispute nonarbitrable. We reverse.

The arbitration clause at issue, entitled "Limited Subject Matter Arbitration," reads: "Any dispute arising out of or relating to this Agreement which does not involve intellectual property rights which is not resolved pursuant to Articles 15.1 or 15.2 shall be resolved by final and binding arbitration conducted in New York . . . and, except as provided for in this Article 15.3, under the then current Rules of the American Arbitration Association ('AAA')." The relevant AAA rule, rule 7 (a) of the Commercial Arbitration Rules, upon which Elan relies for its argument, states, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Elan's argument that it is for the arbitrator to determine the question of arbitrability ignores the clear language of article 15.3, the arbitration provision of the collaboration agreement. It is true, as Elan argues, that this Court has held that the parties' incorporation of the AAA Rules gives the arbitrator jurisdiction over questions of arbitrability, even though the clause in question contains exceptions to the agreement to arbitrate (*Morrell & Co. v Lehr Constr. Corp.*, 287 AD2d 257 [2001]). Here, however, the clause in question not only excepts disputes involving intellectual property rights from arbitration but also, in equally clear language, removes the exception for intellectual property disputes from the Rules of the AAA. Thus, the governing principle remains: a court will not order a party to submit to arbitration absent evidence of that party's " 'unequivocal intent to arbitrate the relevant dispute' " (*Primavera Labs. v Avon Prods.*, 297 AD2d 505, 505 [2002], quoting *Matter of Helmsley [Wien]*, 173 AD2d 280, 281 [1991]). It is for the court to determine whether the parties have agreed to arbitrate the

particular issue. "The threshold determination of whether there is a 'clear, unequivocal and extant agreement to arbitrate' the disputed claims is to be made by the court and not the arbitrator" (*id.*, quoting *Matter of Primex Intl. Corp. v Wal-Mart Stores*, 89 NY2d 594, 598 [1997]). In its demand for arbitration, Elan is seeking a worldwide license of Pharmacia and Pfizer's interest in "regulatory approvals, patents, and know-how relating to the subject matter of the collaboration." These are topics that, on their face, "involve intellectual property rights," at least to the extent of raising an issue of fact as to whether the parties had an unequivocal intent to arbitrate the dispute over them (*see Matter of Helmsley [Wien], supra*). Thus, it was error for Supreme Court to rule that, as a matter of law, these subjects fell within the disputes involving "intellectual property rights" exclusion. The court should have invoked CPLR article 4 (special proceedings), which provides, "If triable issues of fact are raised they shall be tried forthwith and the court shall make a final determination thereon" (CPLR 410).

Supreme Court also erred in holding that the parties clearly intended to arbitrate disputes that both did not involve intellectual property rights and were not resolved in accordance with the procedures set forth in article 15.1 or 15.2. The court held that "to be eligible for arbitration, *both* conditions . . . must be met." According to the court, article 15.1 provided an alternate dispute resolution mechanism for disputes about "scientific" or "commercial" matters. Article 15.2 provided another layer of review for such disputes.

Contrary to the court's reasoning, the language of article 15.3 does not mandate that an attempt be made to resolve a dispute under article 15.1 or 15.2 before the claim can be submitted to arbitration. Article 15.3 can be reasonably interpreted to mean that arbitration is required for a dispute that does not involve intellectual property rights and is not amenable to resolution under article 15.1 or 15.2 because it does not involve a "scientific" or "commercial" matter. On this record, it is not clear whether the breach of contract claims, such as those set forth in Elan's addendum, constitute "commercial" matters to be addressed under the dispute resolution scheme outlined in articles 15.1 and 15.2. Thus, issues of fact also exist as to whether an attempt to resolve any or all of these claims pursuant to articles 15.1 and 15.2 is a precondition to arbitration. Concur—Nardelli, J.P., Andrias, Sullivan and Ellerin, JJ.