Kanner v Westchester Med. Group, P.L.L.C. (2023 NY Slip Op 50877(U))

[*1]

Kanner v Westchester Med. Group, P.L.L.C.

2023 NY Slip Op 50877(U)

Decided on August 25, 2023

Supreme Court, Bronx County

Gomez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 25, 2023
Supreme Court, Bronx County

Barry Kanner, M.D., Plaintiff,
against
Westchester Medical Group, P.L.L.C. D/B/A Westmed Medical Group, a New York Professional Limited Liability Company, "John Doe 1-300" and "Jane Doe 1-300," Defendant(s).

Index No. 814373/22E

Counsel for Plaintiff: Salamon, Gruber, Blaymore & Strenger, PC
Counsel for Westmed: Jackson Lewis, PC

Fidel E. Gomez, J.

In this action for, inter alia, breach of contract, plaintiff moves seeking the entry of a default judgment pursuant to CPLR § 3215 against all defendants on grounds that despite being served with the summons with notice, defendants have failed to answer or otherwise appear. Defendant WESTCHESTER MEDICAL GROUP, P.L.L.C. D/B/A WESTMED MEDICAL GROUP (Westmed) opposes the instant motion asserting, inter alia, that the failure to interpose an answer is excusable inasmuch as after it received the summons with notice the delay in forwarding the same to counsel was due to an illness of its Senior Vice President's family member. Moreover, Westmed contends that the compulsory arbitration clause to which plaintiff is bound constitutes a meritorious defense to this action. Westmed also cross moves seeking an order pursuant to CPLR § 7503(a), compelling arbitration and thereafter, pursuant to CPLR 3211(a)(5), dismissing this action based on arbitration. Alternatively, Westmed moves for an order pursuant to CPLR § 7503(b) staying this action until the conclusion of the arbitration. Westmed avers that the agreements between the parties compel arbitration of all disputes arising therefrom, which therefore includes all issues interposed by plaintiff in his summons with notice. Plaintiff opposes Westmed's cross-motion asserting that the arbitration clauses within the agreements between the parties are ambiguous, rendering them enforceable.
For the reasons that follow hereinafter, plaintiffs' motion is denied and Westmed's cross-motion is granted, in part.
The instant action is for breach of contract, fraudulent misrepresentation, and breach of the covenant of good faith and fair dealing. The summons with notice [FN1]
, filed on September 28, [*2]2022, states the following. On July 1, 2016, plaintiff, an interventional radiologist, became a shareholder at Westmed, an entity, which provided medical services to the public. Westmed was comprised of shareholders, who would meet quarterly. At the foregoing meetings, the shareholders would discuss any matters relevant to Westmed's business and if necessary, vote on any matters requiring the same. Defendants "JOHN DOE 1-300" AND "JANE DOE 1- 300," (Doe) inter alia, managed Westmed. On the foregoing date, plaintiff executed an Income Agreement as well as a Shareholders Agreement, and as a result, became a shareholder and acquired five shares of common stock and fifteen shares of preferred stock in Westmed. Plaintiff attended all quarterly shareholder meetings. Westmed structured its business such that shareholders and non-shareholders employed by it practiced medicine at Westmed in individual practice groups. Each practice group was a separate profit center responsible for all operational costs, including the cost of medical malpractice insurance. Compensation for the members of each practice group was calculated based on fees generated by the group as well as the costs necessary to operate each group. Each group was directly overseen by Doe. On or about 2015, a member of plaintiff's practice group engaged in acts, which resulted in a disproportionate number of medical malpractice claims against the member. As a result, the cost of the malpractice insurance for plaintiff's group significantly increased. The instant increase was charged equally to plaintiff's group, thereby increasing the group's costs, which in turn reduced plaintiff's compensation. Plaintiff complained about the foregoing to management resulting in a change whereby each member of plaintiff's group had to pay for his/her own malpractice insurance. Thereafter, the member of plaintiff's group who had the disproportionate share of malpractice claims was charged more for malpractice insurance. As a result, the foregoing member began to openly harass plaintiff, thereby creating a hostile and toxic work environment. Despite complaints to Westmed's management, the foregoing environment was allowed to persist. In April 2021, plaintiff notified Westmed that effective June 30, 2021, he was resigning. Thereafter, plaintiff attempted to withdraw his resignation but was not allowed to do so. Plaintiff alleges that during the time that he was employed by Westmed, unbeknownst to him, Westmed and Doe were engaged in negotiations to sell Westmed to WP CityMD Bidco, LLC (Summit Health) for hundreds of millions of dollars in a structure that would value each of Westmed's shareholder's stock holdings in excess of $1 million. Sometime prior to June 30, 2021, with the exception of plaintiff, Westmed's shareholders approved Westmed's sale to Summit Health for more than $600 million. The foregoing sale closed in late 2021 or early 2022. On August 26, 2021, plaintiff received a letter from Westmed informing him that as of that date, he was no longer a shareholder and paid him $46,420.05 for his stocks. In September 2021, plaintiff was sent a Withdrawal Agreement and General Release, which he refused to execute. As a result of plaintiff's refusal to execute the foregoing document, Westmed withheld $80,000 [FN2]
in compensation due to him. Plaintiff alleges that Westmed and Doe engaged in a scheme whereby the sale of Westmed to Summit Health was withheld from him in order to deprive plaintiff of the augmented value of his stock, which would therefore benefit Westmed and Doe. Based on the foregoing, plaintiff contends that he is entitled to damages in excess of $2 million for defendants'
breach of contract, fraudulent misrepresentation and intentional withhold[ing] of material [*3]information as part of a fraudulent scheme to deprive Dr. Kanner of sharing in the monetary benefits of the sale to Summit, breach of the implied covenant of good faith and fair dealing implicit in every contract.
On June 23, 2023, this Court denied Westmed's application, served upon plaintiff on January 20, 2023, which sought identical relief. The denial was premised on the failure to provide the Court with working copies of the motion and was without prejudice.
PLAINTIFF'S MOTION FOR THE ENTRY OF A DEFAULT JUDGMENT
Plaintiff's motion for the entry of a default judgment is denied. Significantly, although Westmed, in failing to establish that it has a meritorious defense in a legally cognizable way, fails to preclude the entry of a default judgment, because it is clear that this action must be resolved by arbitration, the instant motion is nevertheless denied.
Pursuant to CPLR § 3215[f], "[o]n any application for judgment by default, the applicant shall file proof of service of the summons and the complaint . . . and proof of the facts constituting the claim" (Pampalone v Giant Building Maintenance, Inc., 17 AD3d 556, 557 [2d Dept 2005] [Default judgment granted once plaintiff submitted proof that defendant was served with the summons and complaint and an affidavit of the facts constituting the claim.]; Andrade v Ranginwala, 297 AD2d 691, 691-692 [2d Dept 2002]). Once the requisite showing has been made, a motion for a default judgment must be granted unless the defendant can establish a meritorious defense to the claims made, a reasonable excuse for the delay in interposing an answer, and that the delay in interposing an answer has in no way prejudiced the plaintiff in the prosecution of the case (Buywise Holding, LLC v Harris, 31 AD3d 681, 683 [2d Dept 2006]; Giovanelli v Rivera, 23 AD3d 616, 616 [2d Dept 2005]).
Pursuant to CPLR §3215(a), "[i]f the plaintiff's claim is for a sum certain or for a sum which can by computation be made certain, application may be made to the clerk within one year after the default." Accordingly, if the damages sought are not for a sum certain or for an amount which can be made certain, a default judgment is only as to liability, where the defendant admits all traversable allegations in the complaint as to liability only (Rokina Optical Co., Inc. v Camera King, Inc., 63 NY2d 728, 730 [1984]; Arent Fox Kinter Plotkin & Kahn, PLLC v Gmbh, 297 AD2d 590, 590 [2d Dept. 2002]). A trial on inquest must be held wherein the defendant is afforded an opportunity to present and try a case in mitigation of damages (Rokina Optical Co., Inc. at 730; Arent Fox Kinter Plotkin & Kahn, PLLC at 590]). The term "sum certain" contemplates a situation where once liability has been established, "there can be no dispute as to the amount due, as in actions on money judgments and negotiable instruments" (Reynolds Securities, Inc. v Underwriters Bank and Trust Company, 44 NY2d 568, 572 [1978]).
With regard to establishing the merits of the claim, plaintiff may use an affidavit or a complaint verified by the plaintiff (Mullins v DiLorenzo, 199 AD2d 218, 220 [1st Dept 1993]; Gerhardt v J & R Salacqua Contr. Co., Inc., 181 AD2d 719, 720 [2d Dept 1992]). Additionally, plaintiff can also use deposition testimony (Empire Chevrolet Sales Corporation v Spallone, 304 AD2d 708, 709 [2d Dept 2003]); Ramputi v Timko Contracting Corp., 262 AD2d 26, 27 [1st Dept 1999]). While generally, a plaintiff cannot establish the merits of his or her claims using a complaint verified by an attorney (Deleon v Sonin & Genis, 303 AD2d 291, 292 [1st Dept 2003]); Juseinoski v Board of Education of the City of New York, 15 AD3d 353, 356 [2d Dept 2004]), a complaint verified by an attorney, where the attorney has personal knowledge of facts constituting the claim, is sufficient to establish the merits of a plaintiff's claim (State Farm Mutual Automobile Insurance Company v Rodriguez, 12 AD3d 662, 663 [2d Dept 2004]; Martin v Zangrillo, 186 AD2d 724, 724 [2d Dept 1992]).
CPLR § 3215(c) states that
[i]f the plaintiff fails to take proceedings for the entry of judgment within one year after the default, the court shall not enter judgment but shall dismiss the complaint as abandoned, without costs, upon its own initiative or on motion, unless sufficient cause is shown why the complaint should not be dismissed. A motion by the defendant under this subdivision does not constitute an appearance in the action.
Thus, a party who fails to take a default within a year after said default could have been taken, has abandoned his case and the remedy is dismissal (Kay Waterproofing Corp. v Ray Realty Fulton, Inc., 23 AD3d 624, 625 [2d Dept 2005]; Geraghty v Elmhurst Hosp. Center of New York City Health and Hospitals Corp., 305 AD2d 634, 634 [2d Dept 2003]). Significantly, pursuant to CPLR § 320(a), generally "[a]n appearance shall be made within twenty days after service of the summons." In order to avoid dismissal under this section, a plaintiff must offer a reasonable excuse for the failure to timely move for a default and must also demonstrate the merits of the action (Truong v All Pro Air Delivery, Inc., 278 AD2d 45, 45 [1st Dept 2000]; LaValle v Astoria Construction & Paving Corp., 266 AD2d 28, 28 [1st Dept 1999]; State Farm Mutual Automobile Insurance Company v Rodriguez, 12 AD3d 662, 663 [2d Dept 2004]). Notably, in the absence of a motion seeking dismissal for the failure to timely seek a default, a court has the power to dismiss an action sua sponte (Perricone v City of New York, 62 NY2d 661, 563 [1984]; Winkelman v H & S Beer and Soda Discounts, Inc., 91 AD2d 660, 661 [2d Dept 1982]).
Pursuant to CPLR § 320(a), a "defendant appears by serving an answer or a notice of appearance, or by making a motion which has the effect of extending the time to answer." Moreover,
An appearance shall be made within twenty days after service of the summons, except that if the summons was served on the defendant by delivering it to an official of the state authorized to receive service in his behalf or if it was served pursuant to section 303, subdivision two, three, four or five of section 308, or sections 313, 314 or 315, the appearance shall be made within thirty days after service is complete.
(CPLR § 320[a]). Thus, upon the service of a complaint, a defendant appears by either filing an answer, a notice of appearance or by making a pre-answer motion pursuant to CPLR § 3211(a), which per CPLR § 3211(f), extends a defendant's time to appear" (21st Mtge. Corp. v Raghu, 197 AD3d 1212, 1215 [2d Dept 2021]; Deutsche Bank Natl. Tr. Co. v Hall, 185 AD3d 1006, 1008 [2d Dept 2020]). A notice of appearance confers personal jurisdiction over a defendant and is the "equivalent of personal service of a summons upon him" (Natl. Loan Inv'rs, L.P. v Piscitello, 21 AD3d 537, 537 [2d Dept 2005]). A notice of appearance in lieu of an answer ought to be reserved for instances where the plaintiff's process was service of a summons with notice rather than a complaint (Deutsche Bank Natl. Tr. Co. at 1008). Significantly, the service of a notice of appearance in response to a complaint "does not absolve a defendant from complying with the time restrictions imposed by CPLR 320 (a) which govern the service of an answer or the making of a motion pursuant to CPLR 3211" (21st Mtge. Corp. at 1216; Deutsche Bank Natl. Tr. Co. at 1009-1010). Stated differently, "a defendant who serves a timely notice of appearance may nevertheless default in answering" (21st Mtge. Corp. at 1216; Deutsche Bank Natl. Tr. Co. at 1009-1010). This is because, while a notice of appearance satisfies CPLR § 320(a), "[t]he failure to interpose a timely answer constitutes a default in pleading, an independent default basis that is analytically 'distinct from a failure to appear'" (21st Mtge. Corp. at 1215). Accordingly, to avoid the entry of a default judgment, a defendant who files a notice of appearance should nevertheless serve an answer within 20 days after service of the complaint (Nationstar Mtge., LLC v Reitman, 198 AD3d 793, 794 [2d Dept 2021] [Court granted motion to enter a default judgment where although defendant served a notice of appearance, he did not serve an answer.]; Deutsche Bank Natl. Tr. Co. v Bararaky, 188 AD3d 1157, 1158 [2d Dept 2020]["Contrary to the defendant's contention, she defaulted in the action by failing to timely answer the complaint; filing a notice of appearance and appearing at settlement conferences did not cure her default."]; LaSalle Bank, N.A. v LoRusso, 155 AD3d 706, 706 [2d Dept 2017] [same]).
Generally, the entry of a default judgment is unwarranted where a defendant serves a notice of appearance and does not interpose an answer "where the complaint does not set forth any allegations that the [defendant is] required to defend against" (Tsionis v Eriora Corp., 123 AD3d 694, 696 [2d Dept 2014]).
In support of his motion, plaintiff submits the summons with notice, which is unverified and makes the allegations discussed above.
Plaintiff also submits an affidavit wherein he reiterates a portion of the allegations in the summons with notice. Significantly, plaintiff alleges that pursuant to written agreements, he is an employee and shareholder of Westmed. On July 1, 2021, Westmed terminated plaintiff's employment and thereafter, knowing it would soon sell itself to Summit Health for more than $600 million sought to purchase plaintiff's ownership interest in Westmed for an undervalued sum. Westmed has failed to pay plaintiff $180,000, representing plaintiff's final salary. Said sum is due to plaintiff under the employment agreement between the parties.
Plaintiff submits an affidavit of service, which evinces that on September 30, 2022, Westmed was served with the summons with notice when a copy of the same was delivered to the New York Secretary of State. 
Lastly, plaintiff submits a notice pursuant to CPLR § 3215(4), which evinces that on November 10, 2022, a copy of the summons with notice was mailed to Westmed. 
Based on the foregoing, plaintiff establishes prima facie entitlement to the entry of a default judgment insofar as he demonstrates that Westmed was duly served with the summons with notice, that at least some of his claims have merit and that Westmed neither appeared nor answered within 30 days of being served. 
Again, pursuant to CPLR § 3215[f], "[o]n any application for judgment by default, the applicant shall file proof of service of the summons and the complaint . . . and proof of the facts constituting the claim" (Pampalone at 557; Andrade at 691-692). Once the requisite showing has been made, a motion for a default judgment must be granted unless the defendant can establish a meritorious defense to the claims made, a reasonable excuse for the delay in interposing an answer, and that the delay in interposing an answer has in no way prejudiced the plaintiff in the prosecution of the case (Buywise Holding, LLC at 683; Giovanelli at 616).
Here, the affidavit of service submitted by plaintiff establishes that Westmed, a New York a limited liability company, was duly served with the summons with notice on September 30, 2022, when a copy of the same was left with the New York Secretary of State (CPLR § 311-a ["Service of process upon a limited liability company may also be made pursuant to article three of the limited liability company law."]; NY Limit Liab Co § 303[a] ["Service of process on the secretary of state as agent of a domestic limited liability company or authorized foreign limited liability company shall be made [by] . . . Personally delivering to and leaving with the secretary of state or his or her deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee, which fee shall be a taxable disbursement. Service of process on such limited liability company shall be complete when the secretary of state is so served."]). 
Moreover, insofar as plaintiff's affidavit alleges that Westmed has breached the employment agreement between the parties by failing to pay plaintiff $180,000, representing plaintiff's final salary, plaintiff establishes that he has a meritorious cause of action for breach of contract. To be sure, the essential elements in an action for breach of contract "are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach" (Dee v Rakower, 112 AD3d 204, 209 [2d Dept 2013]; Elisa Dreier Reporting Corp. v Global Naps Networks, Inc., 84 AD3d 122, 127 [2d Dept 2011]; Brualdi v IBERIA Lineas Aeraes de España, S.A., 79 AD3d 959, 960 [2d Dept 2010]; JP Morgan Chase v J.H. Elec. of NY, Inc., 69 AD3d 802, 803 [2d Dept 2010]; Furia v Furia, 116 AD2d 694, 695 [2d Dept 1986]). Here, plaintiff's affidavit sufficiently establishes the existence of an agreement, his performance and Westmed's breach.
In opposition to the instant motion and in support of its cross-motion, Westmed submits an affidavit by Nicole Klug (Klug), Senior Vice President of Enterprise Risk of Summit Health, who states, in pertinent part, as follows. Klug's responsibilities include the management of litigation brought against Summit Health, its affiliates, and subsidiaries. Westmed has been Summit Health's affiliate since December 23, 2021. The only notification Westmed ever received regarding this action was the notice pursuant to CPLR § 3215(4), dated November 10, [*4]2022, and which Westmed received by mail. The foregoing notice was received on November 14, 2022. Due to the illness of an immediate family member, Klug took bereavement leave between November 10, 2022 and November 28, 2022. The foregoing leave caused a delay in forwarding the foregoing notice to outside counsel. 
Counsel for Westmed states that she received the notice pursuant to CPLR § 3215(4) on November 30, 2022. Counsel emailed plaintiff's counsel and thereafter in conversations occurring between December 4, 2022 and January 10, 2023, counsel for Westmed apprised counsel for plaintiff that absent plaintiff's consent to arbitration, Westmed would make a motion to compel arbitration. 
Westmed submits an Admission Agreement (AA) dated July 1, 2016. The agreement is between plaintiff and Westmed. The agreement evinces that plaintiff, upon paying $26,000, was sold five shares of Westmed's common stock. As a condition of the sale, plaintiff agreed to execute a Consent to Stockholders Agreement (CSA), whereby plaintiff agreed to be bound by the Amended and Restated Stockholders Agreement (ARSA) attached to the AA. The AA further states that plaintiff's employment would be governed by an Employment Agreement (EA) annexed to the AA and that he would execute and be bound by a Consent to Income Agreement (CIA) also annexed to the AA.
Westmed submits the ARSA, which states that its purpose is to, inter alia, provide for the purchase of a withdrawing stockholder's stock in Westmed and provide for the management and resolution of certain contingencies. To the extent relevant, Paragraph 4 of the ARSA governs the sale of stock during the lifetime of a stockholder and fixes the price to be paid to him/her. Paragraph 11 of the ARSA is an arbitration clause, which states that
[i]n the event that any controversy or claim arising out of this Agreement (other than enforcement of a restrictive covenant referred to in Article 21 hereof) cannot be settled by the parties, such controversy or claim shall be settled by arbitration before a single arbitrator in the city, town or village in which the Company's then principal office is located, in accordance with the then current rules of the American Arbitration Association and judgment upon the award may be entered in any court having jurisdiction.
Paragraph 12 dictates that the ARSA is to be construed and enforced under New York law. 
Westmed submits the EA, dated July 1, 2016, which evinces that it governs the employment relationship between Westmed and its employees. Paragraph 3 describes the terms of the compensation to be paid by Westmed and Paragraph 5 describes the services the employee is bound to provide. Paragraph 10 describes the circumstances under which the employment relationship between the parties will be terminated, which includes "[w]henever the CORPORATION and EMPLOYEE shall mutually agree to termination in writing." Paragraph 11 describes the severance pay to which an employee is entitled upon termination and Paragraph 16 contains an arbitration clause, which states that
[i]n the event that any controversy or claim arising out of this Agreement (other than enforcement of the restrictive covenant provisions set forth in Article 13 hereof) cannot be settled by the parties, such controversy or claim shall be settled by arbitration in the city, town or village in which the CORPORATION's then principal office is located, in accordance with the then current rules of the American Health Lawyers Association, and judgment upon the award may be entered in any court having jurisdiction thereof.
Westmed submits the IA, deemed effective as of May 1, 1999, which per Paragraph 1, governs "additional compensation" as described therein. Paragraph 2 describes compensation due to a party—founders and non-founders—upon the termination of their employment. Paragraph 5 contains an arbitration clause, which states that
[i]n the event that any controversy or claim arising out of this Agreement cannot be settled by the parties, such controversy or claim shall be settled by arbitration in the city, town or village in which the Company's then principal office is located, in accordance with the then current rules of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction.
Paragraph 6 of the IA states that it will be construed and enforced pursuant to New York law. 
Based on the foregoing, Wetmed fails to preclude the entry of a default judgment under applicable law in that it fails to establish the merits of its defense in cognizable form. To be sure, to preclude the entry of a default judgment, the opponent must proffer a reasonable excuse for failing to timely answer or appear, the existence of a meritorious defense to this action, and that any delay in answering or appearing has not prejudiced plaintiff (Buywise Holding, LLC at 683; Giovanelli at 616).
Westmed establishes a reasonable excuse for its default in answering and/or appearing. Significantly, here, within her affidavit Klug's states that despite service of the summons with notice upon the New York Secretary of State, Westmed did not receive it until November 14, 2022, after it was mailed to Westmed by plaintiff. Thereafter, the delay in getting the same to counsel was the result of Klug's bereavement leave. Counsel for Westmed states that after she received the summons with notice the delay in making the instant cross-motion was attributable to discussions with plaintiff's counsel in an effort to reach an agreement to resolve the instant dispute by arbitration. The foregoing reasons for failing to timely answer are reasonable as a matter of law (38 Holding Corp. v City of New York, 179 AD2d 486, 487 [1st Dept 1992] ["Our examination of the record indicates that the principal reason for defendant's delay in submitting an answer was the terminal illness of the father of the Assistant Corporation Counsel handling the matter, and the reliance of that counsel upon the continued assurances received from an associate of plaintiff's counsel that defendant's time to answer would be extended."]; Fine v Fine, 12 AD3d 399, 400 [2d Dept 2004] ["The plaintiff's counsel provided a reasonable excuse for her default in opposing the defendant's motion to compel compliance with a term of the stipulation based upon the serious illness and death of her mother-in-law which disrupted her small family law practice."]).
However, here, Westmed fails to establish the existence of a meritorious defense to this action in a legally cognizable form. While the documents appended to Westmed's opposition papers demonstrate, as will be discussed later, that the instant action must be arbitrated, beyond counsel's affirmation, there is no affidavit asserting the same, which constitutes a fatal flaw. Significantly, it is well settled that an attorney affirmation cannot, as a matter of law, establish the merits of a claim (James v Hoffman, 158 AD2d 398, 398 [1st Dept 1990] ["Thus, counsel's affirmation falls short of providing the required evidentiary facts, in admissible form, which would establish that the defaulting party has a meritorious claim."]). Nor can the same be used to establish the existence of a meritorious defense to an action (Studebaker-Worthington Leasing Corp. v Mitchell Titus & Co., 238 AD2d 576, 577 [2d Dept 1997] ["The defendants' motion to vacate the order entered upon their default was supported only by the affirmation of their attorney, who had no personal knowledge of the facts constituting the alleged meritorious defense. Such an affirmation has no substantive probative value as to a showing of a meritorious defense, and the motion to vacate the order entered upon the defendants' default was therefore properly denied."]; M. Cooper Motor Leasing, Ltd. v Data Discount Ctr., Inc., 125 AD2d 454 [2d Dept 1986] ["The defendants' motion to vacate their default was supported only by the affirmation of their attorney who had no personal knowledge of the facts constituting the alleged meritorious defense. Such an affirmation has no substantive probative value as to a showing of a meritorious defense, and the motion to vacate the defendants' default was therefore properly denied."]; Becker Wrecking & Salvage Corp. v Pinebrook Const. Corp., 22 AD2d 976, 976 [3d Dept 1964]).
Thus, while the existence of a binding arbitration clause constitutes, as a matter of law, a meritorious defense to an action (Natl. Agr. Commodities, Inc. v Intl. Commodities Export Co., 108 AD2d 735, 737 [2d Dept 1985] ["Defendant submitted documents at Special Term which support its contention that the peanut count complied with contract specifications, and the December 17, 1980 sales contract contained an arbitration clause valid on its face. For these reasons, we find that defendant's default was excusable and that defendant has set forth a meritorious defense."]; Home Ins. Co. v Meyers Parking Sys., Inc., 186 AD2d 497, 498 [1st Dept [*5]1992] ["The IAS court later opened the default, upon, inter alia, defendant's claim that there was an arbitration agreement to which the respective insurance companies were signatories."]), here, the failure to assert the same in affidavit form from a party possessing such knowledge, renders it inadmissible.
In light of the foregoing, the instant motion would ordinarily be granted. However, where as here, it is clear that this action must be arbitrated and Westmed cross-moves for such relief, the instant motion is denied.

CROSS-MOTION TO COMPEL ARBITRATION
Westmed's cross-motion seeking an order compelling arbitration is granted. Significantly, the record establishes that the agreements between the parties relate to, address, govern, and apply to the claims asserted by plaintiff in his summons with notice and that all of the relevant agreements require arbitration of such claims to the extent they arise from the subject matter governed by the agreements.
Arbitration is borne from an agreement between the parties, allows them to substitute a different method to adjudicate the disputes between them, and allows them to choose the forum in which to resolve such disputes (Siegel v Lewis, 40 NY2d 687, 688-89 [1976] ["[C]ommercial arbitration is a creature of contract. Parties, by agreement, may substitute a different method for the adjudication of their disputes than those which would otherwise be available to them in public courts of law."]; Cross & Brown Co. v Nelson, 4 AD2d 501, 502 [1st Dept 1957] ["Arbitration is a method of adjudication of differences which parties, by consent, substitute for the usual processes provided by law."]). Indeed, it is well settled that in New York, [a]"rbitration is a favored method of dispute resolution . . . and New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration" (Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78 NY2d 88, 93 [1991] [internal quotation marks omitted]; see Weinrott v Carp, 32 NY2d 190, 199 [1973]). Significantly, in this state the jurisprudence vest arbitrators with broad authority to resolve the disputes before them, "unfettered by formal rules of law or the constraints of the traditional litigation model" (Matter of 166 Mamaroneck Ave. Corp. at 93; see Silverman v Benmor Coats, Inc., 61 NY2d 299, 308 [1984]). Indeed, limited only by the provisions in the agreement itself,
an arbitrator is not bound by principles of substantive law or by rules of evidence. He may do justice as he sees it, applying his own sense of law and equity to the facts as he finds them to be and making an award reflecting the spirit rather than the letter of the agreement, even though the award exceeds the remedy requested by the parties
(Silverman v Benmor Coats, Inc., 61 NY2d 299, 308 [1984]; see Sprinzen v Nomberg, 46 NY2d 623, 631 [1979]). As the Court of Appeals noted, "[p]arties who agree to refer contract disputes to arbitration must recognize that arbitrators may do justice and the award may well reflect the spirit rather than the letter of the agreement" Local Div. 1179, Amalgamated Tr. Union, AFL-CIO v Green Bus Lines, Inc., 50 NY2d 1007, 1009 [1980] [internal quotation marks omitted]). 

Accordingly, an arbitrator's award cannot be judicially vacated merely because the arbitrator misconstrues the facts or misapplies the law (Silverman v Benmor Coats, Inc. at 308; Local Div. 1179, Amalgamated Tr. Union, AFL-CIO v Green Bus Lines, Inc., 50 NY2d 1007, 1009 [1980]). Instead, an arbitrator's award may not be set aside by a court "unless it is violative of a strong public policy, or is totally irrational, or exceeds a specifically enumerated limitation on his power" (Silverman at 308; Sprinzen at 631; see Rochester City School Dist. v Rochester Teachers Ass'n, 41 NY2d 578, 582 [1977]). 
Before a party can be compelled to arbitrate a dispute, however, it must be established, with evidence, that the parties have expressly agreed to arbitrate their dispute (Matter of Waldron v Goddess, 61 NY2d 181, 183 [1984]; Schubtex, Inc. v Allen Snyder, Inc., 49 NY2d 1, 6 [1979]; Matter of Helmsley (Wien), 173 AD2d 280, 281 [1st Dept 1991]; Robert Stigwood Org., Ltd. v Atl. Rec. Corp., 83 AD2d 123, 126 [1st Dept 1981]). As such, the agreement requiring arbitration must be clear, explicit, and unequivocal (Matter of Waldron at 183; Acting Supt. of [*6]Schools of Liverpool Cent. School Dist. v United Liverpool Faculty Ass'n, 42 NY2d 509, 512 [1977]; Pharmacia & Upjohn Co. v Elan Pharm., Inc., 10 AD3d 331, 333 [1st Dept 2004]; Robert Stigwood Org., Ltd. at 126). This is particularly true in commercial transactions, because as noted above,
by agreeing to arbitrate a party waives in large part many of his normal rights under the procedural and substantive law of the State, and it would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent. Thus, because of the nature of arbitration, where a party forfeits the right to a trial, often before a jury, in a judicial forum bound by legal precedent and the rules of evidence, the decisions of which are subject to broad appellate review, an agreement to arbitrate may not be implied or depend upon subtlety for its existence
(M.I.F. Sec. Co. v R.C. Stamm & Co., 94 AD2d 211, 212-13 [1st Dept 1983], affd, 60 NY2d 936 [1983] [internal citations and quotation marks omitted]). 

Additionally, compulsory arbitration requires that the dispute between the parties fall within the scope of the agreement, which mandates arbitration (Rockland County v Primiano Const. Co., Inc., 51 NY2d 1, 7 [1980] ["The parties are entitled first to a judicial determination whether there was a valid agreement to arbitrate . . . and that the particular claim sought to be arbitrated comes within the scope of their agreement."]; Edgewater Growth Capital Partners, L.P. v Greenstar N. Am. Holdings, Inc., 69 AD3d 439, 439 [1st Dept 2010]["In deciding an application to compel arbitration pursuant to CPLR 7503 (a), the court is required to first make a determination whether the parties have entered into a valid arbitration agreement and, if so, whether the issue sought to be submitted to arbitration falls within the scope of that agreement."]; Koob v IDS Fin. Servs., 213 AD2d 26, 30 [1st Dept 1995]).
For purposes of determining whether the parties have agreed to arbitration and if the issues between them fall within the ambit of the agreement, "courts generally should apply ordinary state-law principles that govern the formation of contracts" (Revis v Schwartz, 192 AD3d 127, 134 [2d Dept 2020], affd, 38 NY3d 939 [2022] [internal quotation marks omitted]; see is Strongbow Consulting Group LLC v PricewaterhouseCoopers LLP, 195 AD3d 532 [1st Dept 2021], lv to appeal dismissed in part, denied in part, 38 NY3d 997 [2022]; Kent Waterfront Assoc., LLC v Natl. Union Fire Ins. Co. of Pittsburgh, Pa, 216 AD3d 785, 787 [2d Dept 2023]; J.J.'s Mae, Inc. v H. Warshow & Sons, Inc., 277 AD2d 128, 128 [1st Dept 2000]). 
Pursuant to CPLR § 7503(a), a party can seek to have a court compel arbitration. Significantly,
[a] party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. Where there is no substantial question whether a valid agreement was made or complied with, and the claim sought to be arbitrated is not barred by limitation under subdivision (b) of section 7502, the court shall direct the parties to arbitrate. Where any such question is raised, it shall be tried forthwith in said court. If an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made by motion in that action. If the application is granted, the order shall operate to stay a pending or subsequent action, or so much of it as is referable to arbitration.
When an agreement to arbitrate expressly and unequivocally encompasses the subject matter of the dispute before the court, then a motion to compel arbitration should be granted (Avery v Avery, 81 AD2d 849, 851 [2d Dept 1981]).
Here, the agreements between the parties evince that they contain clear and express clauses mandating the arbitration of any and all disputes arising therefrom. Preliminarily, the AA evinces that as a condition to the acquisition of Westmed's stock, plaintiff executed the CSA and the CIA, and that by virtue of the former, plaintiff agreed to be bound by the ARSA and also agreed that his employment with Westmed would be governed by the EA. The ARSA governed the purchase of a withdrawing stockholder's stock in Westmed, governed the sale of stock during the lifetime of a stockholder, and fixed the price to be paid to him/her. Significantly, the ARSA [*7]contained a broad arbitration clause requiring that virtually every dispute arising therefrom had to be resolved by arbitration. The EA, to which plaintiff is bound, governed the employment relationship between Westmed and plaintiff, its employee. This included the terms of the compensation to be paid by Westmed, the services the employee was bound to provide, and the circumstances under which the employment relationship between the parties would be terminated. The EA also contained a broad arbitration clause requiring that virtually every dispute arising therefrom would be resolved via arbitration. Lastly, the IA governed additional compensation, and the compensation due to a party upon the termination of their employment. Like the other agreements, the AI contained a broad arbitration clause requiring that virtually every dispute arising therefrom would also be resolved via arbitration.
Based on the foregoing, it is clear that pursuant to the language in the agreements, the parties are bound by the arbitration clauses therein. 
Indeed, it has long been held that absent a violation of law or some transgression of public policy, people are free to enter into contracts, making whatever agreement they wish, no matter how unwise they may seem to others (Rowe v Great Atlantic & Pacific Tea Company, Inc., 46 NY2d 62, 67-68 [1978]). Consequently, when a contract dispute arises, it is the court's role to enforce the agreement rather than reform it (Grace v Nappa, 46 NY2d 560, 565 [1979]). In order to enforce the agreement, the court must construe it in accordance with the intent of the parties, the best evidence of which being the very contract itself and the terms contained therein (Greenfield v Philles Records, Inc., 98 NY2d 562, 569 [2002]). It is well settled that "when the parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms" (Vermont Teddy Bear Co., Inc. v 583 Madison Realty Company, 1 NY3d 470, 475 [2004] [internal quotation marks omitted]). Moreover, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield at 569). Accordingly, courts should refrain from interpreting agreements in a manner which implies something not specifically included by the parties, and courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing (Vermont Teddy Bear Co., Inc. at 475). This approach serves to preserve "stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses [and] infirmity of memory" (Wallace v 600 Partners Co., 86 NY2d 543, 548 [1995] [internal quotation marks omitted]).
The proscription against judicial rewriting of contracts is particularly important in real property transactions, where commercial certainty is paramount, and where the agreement was negotiated at arm's length between sophisticated, counseled business people (Vermont Teddy Bear Co., Inc. at 475). Specifically, in real estate transactions, parties to the sale of real property, like signatories of any agreement, are free to tailor their contract to meet their particular needs and to include or exclude those provisions which they choose. Absent some indicia of fraud or other circumstances warranting equitable intervention, it is the duty of a court to enforce rather than reform the bargain struck (Grace v Nappa, 46 NY2d 560, 565 [1979]).
In the absence of fraud or other wrongful act, a party who signs a written contract is presumed to know and have assented to the contents therein (Pimpinello v Swift & Co., 253 NY 159, 162 [1930]; Metzger v Aetna Ins. Co., 227 NY 411, 416 [1920]; Renee Knitwear Corp. v ADT Sec. Sys., 277 AD2d 215, 216 [2d Dept 2000]; Barclays Bank of New York, N.A. v Sokol, 128 AD2d 492, 493 [2d Dept 1987]; Slater v Fid. & Cas. Co. of NY, 277 AD 79, 81 [1st Dept 1950]). In discussing this long-standing rule the court in Metzger stated that
[i]t has often been held that when a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations. He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them and there can be no evidence for the jury as to his understanding of its terms. This rule is as applicable to insurance contracts as to contracts [*8]of any kind.
(Metzger at 416 [internal citations omitted]).
Provided a writing is clear and complete, evidence outside its four corners "as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing" (W.W.W. Assoc., Inc. v Giancontieri, 77 NY2d 157, 162 [1990]; see Greenfield v Philles Records, Inc., 98 NY2d 562, 569 [2002]; Mercury Bay Boating Club Inc. v San Diego Yacht Club, 76 NY2d 256, 269-270 [1990]; Judnick Realty Corp. v 32 W. 32nd St. Corp., 61 NY2d 819, 822 [1984]). Whether a contract is ambiguous is a matter of law for the court to decide (id. at 162; Greenfield at 169; Van Wagner Adv. Corp. v S & M Enterprises, 67 NY2d 186, 191 [1986]). A contract is unambiguous if the language it uses has "definite and precise meaning, unattended by danger of misconception in purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion" (Greenfield at 569; see Breed v Ins. Co. of N. Am., 46 NY2d 351, 355 [1978]). Hence, if the contract is not reasonably susceptible to multiple meanings, it is unambiguous and the court is not free to alter it, even if such alteration reflects personal notions of fairness and equity (id. at 569-570). Notably, it is well settled that silence, or the omission of terms within a contract are not tantamount to ambiguity (id. at 573; Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001]). Instead, the question of whether an ambiguity exists must be determined from the face of an agreement without regard to extrinsic evidence (id. at 569-570), and an unambiguous contract or a provision contained therein should be given its plain and ordinary meaning (Rosalie Estates, Inc. v RCO International, Inc., 227 AD2d 335, 336 [1st Dept 1996]). 
Notably, while the parol evidence rule forbids proof of extrinsic evidence to contradict or vary the terms of a written instrument, it has no application in a suit brought where there are claims of fraud in the execution of an agreement or to rescind a contract on the ground of fraud (Sabo v Delman, 3 NY2d 155, 161 [1957]; Adams v Gillig, 199 NY 314, 319 [1910]; Berger-Vespa v Rondack Bldg. Inspectors Inc., 293 AD2d 838, 840 [3d Dept 2002]).
Here, per the clear and unambiguous terms of the agreements, it is clear that they require arbitration of any disputes arising from the agreements to the extent they relate to the subject matter governed by each agreement. Thus, The ARSA requires arbitration of any disputes related to Westmed's stock and disputes regarding the same between the parties. Similarly, the EA requires arbitration of any disputes relating to the employment relationship between the parties, including compensation. Lastly, the IA, governed additional compensation due to a party upon the termination of their employment, and also requires arbitration of any disputes related thereto.
Because the summons with notice evinces that all claims asserted by plaintiff concern his employment with Westmed, his compensation, and the purchase of the Westmed stock he owned, or as urged by him, which he still owns, his claims all fall within the scope of arbitration clauses in the respective agreements. Thus, the instant cross-motion seeking to compel arbitration must be granted.
Contrary to plaintiff's contention, the fact that the arbitration clauses in the agreements prescribe different arbitration forums does not render the clauses unambiguous and as urged, unenforceable. It is clear that plaintiff agreed to arbitrate the instant dispues and that therefore, he was aware that he might have to arbitrate certain issues in different arbitration forums. Plaintiff's reliance on ALP, Inc. v Moskowitz (204 AD3d 454 [1st Dept 2022]), does not avail him. In ALP, the court denied defendant's motion seeking to compel arbitration because "the nonarbitrable claims [were] inextricably intertwined with the arbitrable claims [such that], all the claims should be resolved in a single forum [namely, the Supreme Court]"(id. at 456). Thus, in APL, the court was merely applying well settled law that when an action containing claims which are arbitrable and claims that are not is initiated in court, if the claims are inextricably bound, they ought to be adjudicated together in court (Brennan v A.G. Becker, Inc., 127 AD2d 951, 953 [3d Dept 1987]; Steigerwald v Dean Witter Reynolds, Inc., 84 AD2d 905, 906 [4th Dept 1981], affd, 56 NY2d 621 [1982]). Here, while it is true that the claims brought by plaintiff are all inextricably bound, not a single one is nonarbitrable. Accordingly, the cross-motion to compel [*9]arbitration is granted.

MOTION TO DISMISS
Westmed's motion seeking dismissal of this action pursuant to CPLR § 3211(a)(5) is granted. Significantly, under prevailing binding authority, this action must be dismissed on grounds that the parties are bound by an arbitration agreement, which requires arbitration to resolve the instant dispute.
CPLR § 3211(a) and (a)(5) collectively state that, inter alia, "[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that . . . the cause of action may not be maintained because of arbitration and award." Presumably because what is required for dismissal is an arbitration award, an "agreement to arbitrate is not a defense to an action," and thus, the Appellate Division, Second Department has declined to dismiss an action solely because arbitration of all issues befroe it is warranted (C & M 345 N. Main St., LLC v Nikko Const. Corp., 96 AD3d 794, 795 [2d Dept 2012] ["However, an agreement to submit a dispute to mediation and arbitration is not a defense to an action, and, thus, may not be the basis for a motion to dismiss a complaint based on documentary evidence."]; Carbon Capital Mgt., LLC v Am. Exp. Co., 88 AD3d 933, 940 [2d Dept 2011]; (Blatt v Sochet, 199 AD2d 451, 453 [2d Dept 1993]). Instead, the Second Department holds that when a court compels arbitration, it should stay the plenary action until the conclusion of the arbitration (Blatt at 453; Allied Bldg. Inspectors Intern. Union of Operating Engineers, Local Union No. 211, AFL-CIO at 739).
Conversely, however, the Appellate Division, First Department holds that when "all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings" (Republic Mortg. Ins. Co. v Countrywide Fin. Corp. 28 Misc 3d 1214[A], *3 [Sup Ct 2010], affd, 87 AD3d 457 [1st Dept 2011]). Indeed, on appeal, with respect to dismissal of the complaint the court held that the "[j]udgment, Supreme Court, New York County . . . which granted defendants' motions to compel arbitration and to dismiss the amended complaint pursuant to CPLR 3211(a)(1) and (7), and denied plaintiffs' cross motion to stay arbitration, unanimously affirmed, without costs" Republic Mortg. Ins. Co. v Countrywide Fin. Corp., 87 AD3d 457, 457 [1st Dept 2011]). The First Department subscribes to the law promulgated by our Federal Courts, which hold that "where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings" (Rubin v Sona Intern. Corp., 457 F Supp 2d 191, 198 [SDNY 2006]; see Choice (Hotels Intern., Inc. v BSR Tropicana Resort, Inc., 252 F3d 707, 709-710 [CA 4 2001] ["Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."]; Alford v Dean Witter Reynolds, Inc., 975 F2d 1161, 1164 [5th Cir 1992] ["The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."]). 
Here, having determined that all claims interposed by plaintiff in his summons with notice must be arbitrated such that this Court has granted that portion of Westmed's cross-motion, this Court must also grant Westmed's application to dismiss the instant action. 
Based on the foregoing, Westmed's application to stay this action is denied as moot. It is hereby
ORDERED that the parties arbitrate all the claims asserted by plaintiff in his summons with notice in accordance with the agreements between them. It is further
ORDERED that the summons with notice be dismissed with prejudice. It is further
ORDERED that Westmed serve a copy of this Order with Notice of Entry upon plaintiff within thirty days (30) hereof.
This constitutes this Court's decision and Order.
August 25, 2023
Bronx, New York
FIDEL E. GOMEZ, JSC

Footnotes

Footnote 1: It is hard to fathom why rather than file a complaint with his summons, plaintiff chose to file a summons with notice. This is because despite the fact that a summons with notice only requires the proponent to describe the nature of the action and the relief and damages sought (CPLR § 305[b] ["Summons and notice. If the complaint is not served with the summons, the summons shall contain or have attached thereto a notice stating the nature of the action and the relief sought, and, except in an action for medical malpractice, the sum of money for which judgment may be taken in case of default."]), plaintiff nonetheless provides a six page single-spaced statement describing the nature of the instant action. This should have been made part of a complaint, such that, subject to the rules applicable thereto, would have made it easier to read and follow (CPLR § 3014 ["Every pleading shall consist of plain and concise statements in consecutively numbered paragraphs. Each paragraph shall contain, as far as practicable, a single allegation. Reference to and incorporation of allegations may subsequently be by number. Prior statements in a pleading shall be deemed repeated or adopted subsequently in the same pleading whenever express repetition or adoption is unnecessary for a clear presentation of the subsequent matters. Separate causes of action or defenses shall be separately stated and numbered and may be stated regardless of consistency. Causes of action or defenses may be stated alternatively or hypothetically. A copy of any writing which is attached to a pleading is a part thereof for all purposes."]).

Footnote 2: Plaintiff's affidavit avers that he is owed $180,000.