■ CARBON CAPITAL MANAGEMENT, LLC, Respondent-Appellant, v AMERICAN EXPRESS COMPANY et al., Defendants, and IRWIN SELINGER, Appellant-Respondent. [932 NYS2d 488]—

The order of the Supreme Court dated February 25, 2010, in which Justice Driscoll, among other things, directed a hearing to determine the validity of service of process upon the defendant Irwin Selinger, an agent of the defendant Corporate Solutions Group, LLC (hereinafter CSG), who facilitated and/or brokered the financial transaction that is the subject of this action, constituted the law of the case, and was binding on all other justices of coordinate jurisdiction (*see Post v Post*, 141 AD2d 518, 519 [1988]). "The doctrine of the 'law of the case' is a rule of practice, an articulation of sound policy that, when an issue is once judicially determined, that should be the end of the

matter as far as Judges and courts of co-ordinate jurisdiction are concerned" (*Martin v City of Cohoes*, 37 NY2d 162, 165 [1975]; *see Post v Post*, 141 AD2d at 519; *George W. Collins, Inc. v Olsker-McLain Indus.*, 22 AD2d 485, 488-489 [1965]). "Such a rule is essential to an orderly and seemly administration of justice in a court composed of several judges" (*George W. Collins, Inc. v Olsker-McLain Indus.*, 22 AD2d at 489). "When there is an appeal from an order which is found to have been made in violation of the doctrine of law of the case, the Appellate Division may properly reverse it for that reason alone, without regard to the merits" (*Post v Post*, 141 AD2d at 519; *see George W. Collins, Inc. v Olsker-McLain Indus.*, 22 AD2d at 488). Accordingly, the orders dated July 29, 2010, and August 19, 2010, respectively, in which Justice Bucaria, sua sponte, in effect, reconsidered previously determined motions, must be reversed and reversed insofar as appealed from, respectively, as those orders are in violation of the doctrine of law of the case (*see Post v Post*, 141 AD2d at 519; *see also Merriwether v Osborne*, 66 AD3d 851 [2009]; *Crapsi v South Shore Golf Club Holding Co., Inc.*, 19 AD3d 1024, 1025 [2005]).

In the order dated February 25, 2010, the Supreme Court properly directed a hearing to resolve that branch of Selinger's motion which was to dismiss the complaint insofar as asserted against him for lack of personal jurisdiction (*see* CPLR 3211 [a] [8]; *Post v Post*, 141 AD2d at 520). In support of that branch of his motion, Selinger submitted, inter alia, affidavits of security officers at his building asserting that the process server delivered the papers on July 5, 2009, which was a Sunday. The affidavit of the plaintiff's process server, submitted in opposition to that branch of Selinger's motion, alleged that service was effected on Saturday, July 4, 2009, by delivery of a copy of the summons and complaint to a person of suitable age and discretion at Selinger's apartment complex in Atlanta, Georgia, and the subsequent mailing of a second copy to Selinger at his apartment. Pursuant to General Business Law § 11, "[a]ll service or execution of legal process, of any kind whatever, on the first day of the week is prohibited." Further, "[s]ervice or execution of any process upon said day except as herein permitted is absolutely void for any and every purpose whatsoever" (General Business Law § 11). Service of process is to be effected "without the state, in the same manner as service is made within the state" (CPLR 313), and the prohibition of service on a Sunday in General Business Law § 11 applies to service made outside of New York regardless of another state's laws with respect to service on that day of the week (*see Eisenberg v Citation-Langley Corp.*, 99 AD2d 700, 701 [1984]). Accordingly,

in view of the conflicting affidavits submitted regarding the day that service upon Selinger was purportedly made, the Supreme Court properly directed a hearing to resolve that issue (*see DeStaso v Bottiglieri*, 52 AD3d 453, 454 [2008]; *Campbell v Johnson*, 264 AD2d 461 [1999]).

Selinger also moved to dismiss the complaint insofar as asserted against him on the ground that it failed to state a cause of action alleging fraud or breach of fiduciary duty (*see* CPLR 3211 [a] [7]). The plaintiff alleged that Selinger, acting through CSG—which is not a party to this appeal—fraudulently induced the plaintiff's assignor, Dr. Jonathan S. Landow, and nonparty New York Medical, P.C. (hereinafter New York Medical), to enter into a financial transaction with nonparty Derivium Capital, LLC (hereinafter Derivium). The plaintiff alleged that Selinger misrepresented that the transaction was a loan, when it was actually treated as a sale for federal income taxation purposes. The plaintiff further alleged that Selinger misrepresented that, during the term of the "loan," Derivium would hold certain floating-rate notes as collateral, and that at the end of the loan term Landow and New York Medical would have the option of repaying the loan with interest or surrendering the notes, but that, instead, Derivium sold those notes and used the proceeds for further investment. With respect to the cause of action alleging breach of fiduciary duty, the plaintiff alleged that Selinger breached his duty to Landow through the aforementioned fraudulent misrepresentations, and by failing to diligently investigate Derivium's fitness as a lender before advising Landow to enter into the transaction.

In order to establish fraud, a plaintiff must show "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages" (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]; *see Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403, 407 [1958]). A cause of action alleging fraud must be pleaded with the particularity required by CPLR 3016 (b) (*see Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d at 559; *Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 492 [2008]). "Although under section 3016 (b) the complaint must sufficiently detail the allegedly fraudulent conduct, that requirement should not be confused with unassailable proof of fraud. Necessarily, then, section 3016 (b) may be met when the facts are sufficient to permit a reasonable inference of the alleged conduct" (*Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d at 492). Here, the Supreme Court properly determined that the complaint stated a cause of action

alleging fraud with respect to the alleged misrepresentations regarding Derivium's integrity as a lender, and that Derivium would hold the floating-rate notes as collateral during the pendency of the "loan." Further, the Supreme Court properly determined that any misrepresentations by Selinger that the transaction was tax-free are, standing alone, not actionable (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 419-420 [1996]). However, if the plaintiff can establish that Selinger, with the intent to induce reliance, misrepresented the underlying nature of the transaction for the purpose of deceiving the plaintiff as to the tax consequences of the transaction, the plaintiff may be able to recover any proximately caused damages under a theory of fraud (*id.* at 420). We further reject Selinger's contention that the fraud cause of action should have been dismissed on the ground that Landow was a sophisticated investor, as we cannot say, as a matter of law, that Landow's alleged reliance on Selinger's representations was unjustified (*see DDJ Mgt., LLC v Rhone Group L.L.C.*, 15 NY3d 147, 155 [2010]; *Schlaifer Nance & Co. v Estate of Warhol*, 119 F3d 91, 98 [1997]).

"[A] fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation' " (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005], quoting Restatement [Second] of Torts § 874, Comment *a*]). "Such a relationship, necessarily fact-specific, is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d at 19; *see Northeast Gen. Corp. v Wellington Adv.*, 82 NY2d 158, 162 [1993]). While courts will generally look to the parties' contractual agreement to discover the nature of their relationship, the existence of a fiduciary relationship is not dependent solely upon an agreement or contractual relation (*see EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d at 20). Rather, the actual relationship between the parties determines the existence of a fiduciary duty (*id.*, citing Restatement [Second] of Torts § 874, Comment *b*]). Here, the Supreme Court properly concluded, in the first instance, that the complaint stated a cause of action alleging breach of fiduciary duty, which, here, was premised both on actual fraud and failure to exercise due diligence in the investigation of an investment opportunity. A factfinder could draw a rational inference of an enhanced fiduciary level of trust between Selinger and Landow from the details of their business relationship leading up the consummation of the Derivium transaction. The allegations are supported by, inter alia, refer-

ence to correspondence between Selinger and Landow, wherein Selinger referred to himself as Landow's "financial teacher," and stated that the two made a "great winning team."

The Supreme Court properly concluded that the cause of action alleging fraud was not barred by the statute of limitations. An action alleging fraud must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it" (CPLR 213 [8]). "[A] cause of action [to recover damages] for fraud cannot accrue until every element of the claim, including injury, can truthfully be alleged" (*New York City Tr. Auth. v Morris J. Eisen, P.C.*, 276 AD2d 78, 85 [2000]). Here, Landow entered into the contract with Derivium on April 11, 2003, at which point his reliance on Selinger's representations would have given rise to his alleged injuries. Accordingly, since the action was commenced on April 9, 2009, less than six years later, that branch of Selinger's motion which was to dismiss the cause of action alleging fraud as barred by the statute of limitations was properly denied.

The Supreme Court properly determined that the cause of action alleging breach of fiduciary duty was partially barred by the statute of limitations. "The statute of limitations for a breach of fiduciary duty cause of action depends on the substantive remedy which the plaintiff seeks" (*Scott v Fields*, 85 AD3d 756, 759 [2011]; *see Loengard v Santa Fe Indus.*, 70 NY2d 262, 266 [1987]). Where the relief sought is monetary in nature, the statute of limitations is three years (*see Scott v Fields*, 85 AD3d 756 [2011]; *Monaghan v Ford Motor Co.*, 71 AD3d 848, 849-850 [2010]). However, where an allegation of fraud is essential to a breach of fiduciary duty claim, courts will apply the six-year statute of limitations applicable to fraud under CPLR 213 (8) (*see Monaghan v Ford Motor Co.*, 71 AD3d at 850; *see also IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 139 [2009]; *Kaufman v Cohen*, 307 AD2d 113, 119 [2003]). Here, the claim that Selinger breached a fiduciary duty to Landow by failing to diligently ascertain Derivium's fitness as a lender is not based upon actual fraud and, therefore, that claim is governed by the three-year statute of limitations, and is time-barred. However, the claims that Selinger breached his fiduciary duty to Landow by misrepresenting Derivium's legitimacy as a lender, the tax consequences of the alleged loan, and whether Derivium would hold the floating-rate notes as collateral are, in essence, fraud-based claims, and the Supreme Court correctly determined that these claims were governed by the six-year statute of limi-

tations, and were timely (*see Monaghan v Ford Motor Co.*, 71 AD3d at 850).

We reject Selinger's contention that the complaint should have been dismissed pursuant to CPLR 3211 (a) (1) insofar as asserted against him because of an arbitration clause in a consulting agreement between CSG and New York Medical. As an initial matter, "[a]n agreement to arbitrate is not a defense to an action" and, thus, "it may not be the basis for a motion to dismiss" (*Allied Bldg. Inspectors Intl. Union of Operating Engrs., Local Union No. 211, AFL-CIO v Office of Labor Relations of City of N.Y.*, 45 NY2d 735, 738 [1978]; *see Blatt v Sochet*, 199 AD2d 451 [1993]). Moreover, Selinger did not move to stay this judicial proceeding pending the arbitration (*see* CPLR 7503 [a]), and we decline to exercise our own authority to stay this proceeding at this time (*see Allied Bldg. Inspectors Intl. Union of Operating Engrs., Local Union No. 211, AFL-CIO v Office of Labor Relations of City of N.Y.*, 45 NY2d at 738), as he has failed to show that the agreement at issue governs disputes between himself and Landow in their personal capacities. Although both are signatories to the agreement, they signed on behalf of CSG and New York Medical, respectively. Additionally, the complaint alleges that Selinger breached a fiduciary duty which was separate from any duty created by the terms of the agreement (*see e.g. EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d at 20).

Finally, we reject Selinger's contention that the complaint should have been dismissed insofar as asserted against him under the doctrine of champerty. The record demonstrates that the plaintiff, Carbon Capital Management, LLC, is owned and managed by Landow, and the assignment of Landow's interest in this action to the plaintiff does not implicate the doctrine of champerty (*see* Judiciary Law § 489; *Sprung v Jaffe*, 3 NY2d 539, 544 [1957]). Angiolillo, J.P., Dickerson, Chambers and Lott, JJ., concur. **[Prior Case History: 2010 NY Slip Op 30477(U).]**