(June 14, 2017)

■  SALVADOR Y. AGUILAR, as Administrator of the Estate of
BLANCA AGUILAR, Deceased, Appellant, v POLINA FEYGIN, M.D.,
et al., Defendants, and ROXANA VARTOLOMEI, M.D., Respondent. [56 NYS3d 536]—

In an action, inter alia, to recover damages for medical malpractice, the plaintiff appeals from a judgment of the Supreme Court, Queens County (D. Hart, J.), entered November 15, 2013, which, after a hearing, dismissed the complaint insofar as asserted against the defendant Roxana Vartolomei.

Ordered that the judgment is reversed, on the law, with costs, the complaint is reinstated insofar as asserted against the defendant Roxana Vartolomei, and the matter is remitted to the Supreme Court, Queens County, for further proceedings on the complaint.

The plaintiff, as administrator of the estate of Blanca Aguilar (hereinafter the decedent), commenced this action sounding in medical malpractice, premised upon the alleged failure to diagnose and treat pericardial effusion in the decedent, resulting in her death from cardiac tamponade on February 6, 2007, at the defendant New York Hospital Queens (hereinafter NYHQ). The plaintiff alleged that the defendant Roxana Vartolomei, a cardiologist who was involved in the decedent's care and treatment at NYHQ, deviated from accepted standards and practice by, among other things, improperly reading an echocardiogram that was taken on January 31, 2007, when the decedent was admitted to NYHQ, and failing to order a follow-up echocardiogram. The plaintiff alleged that Vartolomei's departures were a proximate cause of the decedent's injuries and death. Several other physicians who treated the decedent during her stay at NYHQ were also named as defendants in the complaint. In an order dated September 27, 2011, the Supreme Court (O'Donoghue, J.) denied Vartolomei's motion for summary judgment dismissing the complaint insofar as asserted against her, upon determining, based upon the plaintiff's opposition papers, which included the affirmation of his medical expert, that "[q]uestion(s) of fact exist, *including but not limited to*, whether [Vartolomei] departed from the accepted standard of care by failing to formulate a differential diagnosis that included the diagnosis of pericardial effusion and cardiac tamponade and if so, whether such departure was a proximate cause of plaintiff's injuries which may require resolution at trial." The same order

also granted, without opposition, dismissal of the complaint insofar as asserted against the defendants Vladimir Sabayev and Polina Feygin.

Thereafter, this action was assigned to a different Justice (D. Hart, J.) for a jury trial. Following jury selection, the complaint was dismissed insofar as asserted against the defendant Lawrence T. Choy and NYHQ. In light of the dismissal as to those defendants, the Supreme Court declared a mistrial, with jury selection to begin anew. After a second jury was selected, the court, sua sponte, directed a hearing, denominated as one pursuant to *Frye v United States* (293 F 1013 [DC Cir 1923]), at which the plaintiff's medical expert, Dr. Stanley Epstein, was to testify in order to determine whether his opinion rendered in this case as to Vartolomei was sufficiently reliable. Following the hearing, the court directed dismissal of the complaint insofar as asserted against Vartolomei. We reverse.

At the outset, we note that while the judgment appealed from states that the *Frye* hearing was held upon an application by Vartolomei, no such application was ever made.

The general purpose of a *Frye* hearing is to determine whether an expert's opinion is " 'based on principles that are sufficiently established to have gained general acceptance as reliable' " (*Lipschitz v Stein*, 65 AD3d 573, 576 [2009], quoting *Nonnon v City of New York*, 32 AD3d 91, 103 [2006], *affd* 9 NY3d 825 [2007]). Here, however, the overall nature of the questions posed at the hearing directed, sua sponte, by the Supreme Court, as well as statements by the court, establish that the true purpose of the hearing was not to determine whether Dr. Epstein's opinions were based on principles that are sufficiently established to have gained general acceptance as reliable. Rather, the hearing purported to revisit the determination made in the order dated September 27, 2011, denying Vartolomei's motion for summary judgment insofar as asserted against her. In doing so, the court violated the doctrine of law of the case by completely disregarding the prior order, issued by a Justice of coordinate jurisdiction, that had concluded that triable issues of fact existed as to whether Vartolomei departed from accepted medical standards of care and whether such departures were a proximate cause of the injuries sustained by the decedent (*see Fudge v North Shore-Long Is. Jewish Health Servs. Plainview & Manhasset Hosps.*, 117 AD3d 783, 785 [2014]; *Carbon Capital Mgt., LLC v American Express Co.*, 88 AD3d 933, 935-936 [2011]).

Moreover, this Court has held that "[a] court's power to dismiss a complaint, sua sponte, is to be used sparingly and

only when extraordinary circumstances exist to warrant dismissal" (*Onewest Bank, FSB v Fernandez*, 112 AD3d 681, 682 [2013] [internal quotation marks omitted]). Here, there were no extraordinary circumstances warranting the sua sponte dismissal of the complaint insofar as asserted against Vartolomei.

In light of our determination, we need not consider the plaintiff's contention raised in Point II of his brief, that Dr. Epstein's hearing testimony was sufficient to raise triable issues of fact as to whether Vartolomei departed from accepted medical standards of care and whether such departures were a proximate cause of the injuries sustained by the decedent.

We also decline to consider the plaintiff's request, in Point III of his brief, that this Court issue an order deeming Dr. Epstein's hearing testimony inadmissible in a subsequent trial of this action, as this request, in the nature of a motion is limine, should, in the first instance, be addressed to the trial court. Chambers, J.P., Miller, Hinds-Radix and LaSalle, JJ., concur.