Aguasvivas v Mountain Val. Indem. Co. (2025 NY Slip Op 50149(U))

[*1]

Aguasvivas v Mountain Val. Indem. Co.

2025 NY Slip Op 50149(U)

Decided on February 13, 2025

Supreme Court, Bronx County

Gomez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 13, 2025
Supreme Court, Bronx County

Wanny Aguasvivas, Plaintiff(s),

against
Mountain Valley Indemnity Company, Defendant(s)

Index No. 810634/24E

Counsel for Plaintiff: Kafko Schnitzer, LLP
Counsel for Defendant: Mound Cotton Wollan & Greengrass, LLP

Fidel E. Gomez, J.

In this action for, inter alia, breach of contract, defendant moves seeking an order, inter alia, pursuant to CPLR § 3211(a)(1), dismissing the complaint because the documentary evidence conclusively establishes that the instant action is barred by the statute of limitations prescribed by the insurance policy, as extended by Insurance Law § 3404. Plaintiff opposes the instant motion averring that the relevant insurance policy is ambiguous thereby warranting denial of the defendant's motion.
For the reasons that follow hereinafter, defendant's motion is granted.
The instant action is for breach of contract and fraud. The complaint, filed on July 3, 2024, alleges the following. Plaintiff purchased and was insured by a homeowner's insurance policy issued by defendant, which insured real property located at 703 Thieroit Avenue, Bronx, NY (703). On April 28, 2022, 703 sustained damage as a result of a fire. Plaintiff timely notified defendant and submitted a claim under the policy. On February 2, 2023, after defendant investigated the claim and plaintiff appeared at an EUO, defendant denied plaintiff's claim. Based on the foregoing, plaintiff interposes two causes of action. The first cause of action is for breach of contract, wherein it is claimed that in denying plaintiff's claim, defendant breached the terms of the policy. The second cause of action is for fraud, wherein it is alleged that defendant has a policy of denying claims under its policies on grounds related to the configuration of the insured premises. As a result of the foregoing, plaintiff seeks damages totaling at least $100,000.
Standard of Review
Pursuant to CPLR § 3211(a)(1), a pre-answer motion for dismissal based upon documentary evidence should only be granted when "the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 326 [2002]; Leon v Martinez, 84 NY2d 83, 88 [1994]; IMO Industries, Inc. v Anderson Kill & Olick, P.C., 267 AD2d 10, 10 [1st Dept 1999]). Much like on a motion pursuant to CPLR § 3211(a)(7), on a motion to dismiss pursuant to CPLR § [*2]3211(a)(1), the allegations in plaintiff's complaint are accepted as true, construed liberally and given every favorable inference (Arnav Industries, Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner, L.L.P., 96 NY2d 300, 303 [2001], overruled on other grounds by Oakes v Patel, 20 NY3d 633 [2013]; Hopkinson III v Redwing Construction Company, 301 AD2d 837, 837-838 [3d Dept 2003]; Fern v International Business Machines Corporation, 204 AD2d 907, 908-909 [3d Dept 1994]).
Affidavits are not documentary evidence for purposes of establishing relief under CPLR § 3211(a)(1) (Fleming v Kamden Properties, LLC, 41 AD3d 781, 781 [2d Dept 2007][Here, the appellants' submissions in support of their motion included an affidavit and a verified Surrogate's Court petition which the Supreme Court properly declined to consider on a motion to dismiss pursuant to CPLR 3211 (a)(1) because the submissions did not constitute documentary evidence."]; Berger v Temple Beth-El of Great Neck, 303 AD2d 346, 347 [2d Dept 2003]).
Significantly, documentary evidence means judicial records, judgments, orders, contracts, deeds, wills, mortgages and "a paper whose content is essentially undeniable and which, assuming the verity of its contents and the validity of its execution, will itself support the ground upon which the motion is based" (Webster Estate of Webster v State of New York, 2003 WL 728780, at *1 [Ct Cl Jan. 30, 2003]).

Applicable Law
It has long been held that absent a violation of law or some transgression of public policy people are free to enter into contracts, making whatever agreement they wish no matter how unwise they may seem to others (Rowe v Great Atlantic & Pacific Tea Company, Inc., 46 NY2d 62, 67-68 [1978]). Consequently, when a contract dispute arises, it is the court's role to enforce the agreement rather than to reform it (Grace v Nappa, 46 NY2d 560, 565 [1979]). In order to enforce the agreement, the court must construe it in accordance with the intent of the parties, the best evidence of which is the very contract itself and the terms contained therein (Greenfield v Philles Records, Inc., 98 NY2d 562, 569 [2002]). Thus,"when the parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms" (Vermont Teddy Bear Co., Inc. v 583 Madison Realty Company, 1 NY3d 470, 475 [2004] [internal quotation marks omitted]). Moreover, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield at 569). Accordingly, courts should refrain from interpreting agreements in a manner which implies something not specifically included by the parties, and "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (Vermont Teddy Bear Co., Inc. at 475). This approach, of course, serves to provide "stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses [and] infirmity of memory" (Wallace v 600 Partners Co., 86 NY2d 543, 548 [1995] [internal quotation marks omitted]).
Provided a writing is clear and complete, evidence outside its four corners "as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing" (W.W.W. Assoc., Inc. v Giancontieri, 77 NY2d 157, 162 [1990]; see Greenfield v Philles Records, Inc., 98 NY2d 562, 569 [2002]; Mercury Bay Boating Club Inc. v San Diego Yacht Club, 76 NY2d 256, 269-270 [1990]; Judnick Realty Corp. v 32 W. 32nd St. Corp., 61 NY2d 819, 822 [1984]). Whether a contract is ambiguous is a matter of law for the court to decide [*3](W.W.W. Assoc., Inc. at 162; Greenfield at 169; Van Wagner Adv. Corp. v S & M Enterprises, 67 NY2d 186, 191 [1986]). A contract is unambiguous if the language it uses has "definite and precise meaning, unattended by danger of misconception in purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion" (Greenfield at 569; see Breed v Ins. Co. of N. Am., 46 NY2d 351, 355 [1978]). Hence, if the contract is not reasonably susceptible to multiple meanings, it is unambiguous and the court is not free to alter it, even if such alteration reflects personal notions of fairness and equity (Greenfield at 569-570). Notably, it is well settled that silence, or the omission of terms within a contract, are not tantamount to ambiguity (id. at 573; Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001]). Instead, the question of whether an ambiguity exists must be determined from the face of an agreement without regard to extrinsic evidence (Greenfield at 569-570), and an unambiguous contract or a provision contained therein should be given its plain and ordinary meaning (Rosalie Estates, Inc. v RCO International, Inc., 227 AD2d 335, 336 [1st Dept 1996]). 
Notably, while the parol evidence rule forbids proof of extrinsic evidence to contradict or vary the terms of a written instrument, it generally has no application in a suit brought where there are claims of fraud in the execution of an agreement or to rescind a contract on the grounds that a party was fraudulently induced to execute the same (Danann Realty Corp. v Harris, 5 NY2d 317, 320 [1959]; Sabo v Delman, 3 NY2d 155, 161 [1957]; Adams v Gillig, 199 NY 314, 318 [1910]; Berger-Vespa v Rondack Bldg. Inspectors Inc., 293 AD2d 838, 840 [3d Dept 2002]). This is true even where a contract contains a general merger clause, wherein the parties disclaim reliance on representations not contained in the contract (Danann Realty Corp. at 320 [1959] ["A reiteration of the fundamental principle that a general merger clause is ineffective to exclude parol evidence to show fraud in inducing the contract would then be dispositive of the issue. To put it another way, where the complaint states a cause of action for fraud, the parol evidence rule is not a bar to showing the fraud — either in the inducement or in the execution — despite an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made" (internal citations omitted).]; Sabo at 161 ["The provision to which we above referred — that no verbal undertakings or conditions not contained in the writing were to be binding on either party — sometimes termed a merger clause, merely furnishes another reason for applying the parol evidence rule, and, just as that rule is ineffectual to exclude evidence of fraudulent representations, so this provision may not be invoked to keep out such proof. Indeed, if it were otherwise, a defendant would have it in his power to perpetrate a fraud with immunity, depriving the victim of all redress, if he simply has the foresight to include a merger clause in the agreement. Such, of course, is not the law" (internal citations omitted).]).
In the absence of fraud or other wrongful act, a party who signs a written contract is presumed to know and have assented to the contents therein (Pimpinello v Swift & Co., 253 NY 159, 162 [1930]; Metzger v Aetna Ins. Co., 227 NY 411, 416 [1920]; Renee Knitwear Corp. v ADT Sec. Sys., 277 AD2d 215, 216 [2d Dept 2000]; Barclays Bank of New York, N.A. v Sokol, 128 AD2d 492, 493 [2d Dept 1987]; Slater v Fid. & Cas. Co. of NY, 277 AD 79, 81 [1st Dept 1950]). In discussing this long standing rule, the court in Metzger stated that
[i]t has often been held that when a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his [*4]contract obligations. He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them and there can be no evidence for the jury as to his understanding of its terms. This rule is as applicable to insurance contracts as to contracts of any kind.
(id. at 416 [internal citations omitted]).
Principles generally applicable to contract interpretation apply equally to insurance contracts and insurance policies (Loblaw v Employers' Liab. Assur. Corp., Ltd., 57 NY2d 872, 876 [1982]; State v Am. Mfrs. Mut. Ins. Co., 188 AD2d 152, 154 [3d Dept 1993]). To that end, the court has the responsibility of determining the rights and obligations of the parties under an insurance contract, using the specific language within the policy (Sanabria v Am. Home Assur. Co., 68 NY2d 866, 868 [1986]; State v Home Indem. Co., 66 NY2d 669, 671 [1985]; Stasack v Capital Dist. Physicians' Health Plan Inc., 290 AD2d 866, 866 [3d Dept 2002]).
When the language in an insurance policy is clear and unambiguous, the interpretation of said document and the determination of the rights and obligations of the parties is a question of law to be adjudicated by the court (Kenyon v Knights Templar & Masonic Mut. Aid Ass'n, 122 NY 247, 254 [1890]; Stasack at 866; Stainless, Inc. v Employers Fire Ins. Co., 69 AD2d 27, 32 [1st Dept 1979], aff'd sub nom. Stainless, Inc. v Employers' Fire Ins. Co., 49 NY2d 924 [1980]). However, if the language in the policy is ambiguous, the court can use extrinsic evidence to determine the intent of the parties to the policy and resolution of the rights and obligations of the parties is a question of fact, to be determined by the trier of fact (State of New York at 671; Stainless, Inc. at 32). If the extrinsic evidence is conclusory, failing to equivocally resolve the ambiguity in a policy, interpretation of the policy remains a question of law for the court to decide; deciding any ambiguities against the insurer (State of New York at 671; Stainless, Inc. at 32). 
In interpreting an insurance policy, the language of the policy, when clear and unambiguous, must be given its plain and ordinary meaning (U.S. Fid. & Guar. Co. v Annunziata, 67 NY2d 229, 232 [1986]; Sanabria at 868). Moreover, the policy should be construed in a way "that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect" (Raymond Corp. v Natl. Union Fire Ins. Co. of Pittsburgh, Pa., 5 NY3d 157, 162 [2005]. Stated differently, the language used in the policy "must be found in the common sense and common speech of the average person" (Stainless, Inc. at 32-33).
It is well settled that the statute of limitations on a cause of action for breach of contract is six years and that it accrues on the date a contract is breached (Ely-Cruikshank Co., Inc. v Bank of Montreal, 81 NY2d 399, 402 [1993]; Matter of Carranza v Prinz, 240 AD2d 405, 405 [2d Dept 1997]; Goicoechea v Law Offices of Stephen R. Kihl, 234 AD2d 507, 508 [2d Dept 1996]). 
Similarly, the statute of limitations for a cause of action for fraud is governed by CPLR § 213(8) and it is six years from accrual, two years after discovery of the fraud, or 2 years from when in the exercise of reasonable diligence, such fraud could have been discovered [id. "an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with [*5]reasonable diligence have discovered it."]). Generally, "an action accrues, then, when all of the facts necessary to sustain the cause of action have occurred, so that a party could obtain relief in court" (Vigilant Ins. Co. of Am. v Hous. Auth. of City of El Paso, Tex., 87 NY2d 36, 43 [1995]; Aetna Life and Cas. Co. v Nelson, 67 NY2d 169, 175 [1986]). Thus, when the fraud alleged stems from a contract, a cause of action for fraud accrues on the date the contract is executed, at which point, there is reliance on the representations made by the defendant (Carbon Capital Mgt., LLC v Am. Exp. Co., 88 AD3d 933, 939 [2d Dept 2011 ["Here, Landow entered into the contract with Derivium on April 11, 2003, at which point his reliance on Selinger's representations would have given rise to his alleged injuries."]; (Kanterakis v Kanterakis, 125 AD3d 814, 816 [2d Dept 2015] ["As the plaintiff correctly asserts, the fraud causes of action against those defendants did not accrue until October 4, 2004, the date of the first allegedly fraudulent transaction in which those defendants were involved."]).
However, it is equally well settled that parties to an insurance policy can agree to shorten the statute of limitations within which to commence a plenary action concerning any law suits arising from the policy (Brandyce v Globe & Rutgers Fire Ins. Co., 252 NY 69, 71 [1929] ["The parties to a contract of insurance may provide for a shorter limitation of actions than that provided in the general Statute of Limitations."]; D'Angelo v Allstate Ins. Co., 126 AD3d 931, 931 [2d Dept 2015] ["However, contrary to the plaintiffs' contention, a one-year time limitation provision for commencing an action under a policy of insurance, such as the subject provision, is valid and enforceable."]; Vinci v Westchester County Health Care Corp., 55 AD3d 599, 600 [2d Dept 2008] ["Parties to a contract may agree to limit the period of time within which an action must be commenced to a shorter period than that provided by the applicable statute of limitations."]; Myers, Smith & Granady, Inc. v New York Prop. Ins. Underwriting Ass'n, 201 AD2d 312, 312 [1st Dept 1994], affd, 85 NY2d 832 [1995] ["A contractual limitation of two years after loss for the commencement of suit on a policy of insurance is valid and enforceable in New York."]).
When a policy prescribes the relevant statute of limitations, an action brought after the expiration of the applicable limitations period must be dismissed as time-barred (Farage v Associated Ins. Mgt. Corp., 210 AD3d 470, 471 [1st Dept 2022], affd, 95,Farage v Associated Ins. Mgt. Corp., 210 AD3d 470, 471 [1st Dept 2022], affd, 2024 WL 4884829 [Ct App Nov. 26, 2024] ["The Tower defendants conclusively established a defense to the asserted claims as a matter of law by submitting documentary evidence that the subject insurance policy contains a two-year limitations period and that plaintiffs' action was commenced after the expiration of that period" [internal quotation marks omitted].; Vinci at 600; Myers, Smith & Granady, Inc. at 312; D'Angelo at 931).
Unlike a traditional claim for breach of contract, which accrues on the date of the purported breach, for purposes of the statute of limitations, a cause of action under an insurance policy accrues on the date of loss, meaning "the occurrence of the casualty or event insured against" (Lichter Real Estate No. Three, L.L.C. v Greater New York Ins. Co., 43 AD3d 366 [1st Dept 2007]; see Roberts v New York Prop. Ins. Underwriting Ass'n, 253 AD2d 807, 807 [2d Dept 1998]; D'Angelo at 931; Morgan Guar. Tr. Co. of New York v Aetna Cas. and Sur. Co., 199 AD2d 72, 73 [1st Dept 1993]; Margulies v Quaker City Fire & Mar. Ins. Co., 276 AD 695, 700 [1st Dept 1950]).
Notably, in order to render any alternate statute of limitations period applicable, the policy must "include distinct language demonstrating that such departure was intended by the parties" (Mercedes-Benz Fin. Services USA, LLC v Allstate Ins. Co., 162 AD3d 1183, 1184 [3d Dept 2018] ["In our view, the generic date of loss language employed here, in the context of the policy as a whole, does not evince an unmistakable5 intention that the one-year limitations period be measured from the occurrence of the underlying event" (internal quotation marks omitted)]; Lobello v New York Cent. Mut. Fire Ins. Co., 152 AD3d 1206, 1208-1209 [4th Dept 2017] ["Plaintiff commenced this action more than two years after the 2009 theft. Interpreting the phrase date of loss as the date on which the theft occurred, defendant contends that the action is time-barred under the terms of the policy. Plaintiff, on the other hand, interprets the phrase date of loss as the date on which the claim was denied and, as a result, contends that the action was timely commenced. We agree with plaintiff. Despite cases holding that date of loss means the date of the underlying catastrophe, including cases from this Department the Court of Appeals has found a distinction between the generic phrase date of loss, and the term of art inception of loss" (internal quotations omitted).]; Med. Facilities, Inc. v Pryke, 95 AD2d 692, 693 [1st Dept 1983], affd, 62 NY2d 716 [1984] ["Since the policy did not include the statutory language set forth in section 168 of the Insurance Law, or indeed any reference to the one-year period of limitations, Special Term was clearly correct in concluding that the one-year period was inapplicable."];
Insurance Law § 3404 prescribes the form of any insurance policy issued in New York, which provides insurance coverage for fire damage to real property and coverage arising from other perils. Insurance Law § 3404(b)(1), states that any policy issued providong coverage against damage caused by a fire must "conform as to all provisions, stipulations, agreements and conditions with such form of policy." Significantly, the form policy promulgated by Insurance Law § 3404 states that
[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twenty-four months next after inception of the loss.
Thus, with respect to the statute of limitations for claims arising from a fire, per the form policy prescribed by Insurance Law § 3404, the statute of limitations is two years and supersedes any period prescribed in a policy if the same is shorter (1303 Webster Ave. Realty Corp. v Great Am. Surplus Lines Ins. Co., 63 NY2d 227, 230-231 [1984] ["The Appellate Division was correct in holding that where a policy of fire insurance provides for a shorter period of limitations than permitted by the standard fire insurance policy contained in subdivision 5 of section 168 the policy is enforceable as if it conformed with the statutory standard."]; Bersani v Gen. Acc. Fire & Life Assur. Corp., Ltd., 36 NY2d 457, 460 [1975] ["In all respects in which the provisions of an insurance policy violate the requirements or prohibitions of the Insurance Law, the policy is enforceable as if it conformed with such requirements or prohibitions."]; Morgan Guar. Tr. Co. of New York v Aetna Cas. and Sur. Co., 199 AD2d 72, 73 [1st Dept 1993] [In an action arising from an insurer's failure to provide coverage to its insured for losses occasioned by burglary and water, to the extent that policy provided coverage for multiple perils, including fire, and shortened the statute of limitations, the Court agreed that the shortened period with respect to claims arising from fire damage violated the Insurance Law.]).

Discussion
Defendant's motion seeking dismissal of the complaint is granted. Significantly, because the policy establishes that this action had to be commenced within two years of the fire alleged and the complaint evinces that the action was commenced more than two years thereafter, this action is time-barred.
In support of its motion defendant submits an insurance policy. The declarations page of the policy evinces that it provides multi-peril coverage to 703, including coverage for damage caused by a fire. The policy is between the parties and was effective from October 17, 2019 to October 17, 2020 and again from October 17, 2021 to October 17, 2022. The "Perils Insured Against" portion of the policy states that plaintiff is insured "against risk of direct loss to property described in Coverages A and B only if that loss is physical loss to property." Under the "Coverages" portion of the policy Coverage A is defined as "the dwelling on the described Location shown in the Declarations." Section 11 of the "Conditions" portion of the policy states
Suits Against Us. No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.
Based on the foregoing, defendant's motion seeking to dismiss this action as time barred is granted. 
As noted above, a pre-answer motion for dismissal based upon documentary evidence should only be granted when "the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen at 326; Leon at 88; IMO Industries, Inc. at 10).
Here, taking the allegations in the complaint as true, as this Court must (Arnav Industries, Retirement Trust at 303; Hopkinson III at 837-838; Fern 908-909), with respect to the causes of action in the complaint, they both stem from defendant's failure to provide coverage to plaintiff for a fire at 703, which occurred on April 28, 2022. 
Moreover, defendant's documentary evidence, namely the policy between the parties, evinces that Section 11 of the "Conditions" portion of the policy required that any action, such as this one, had to be initiated within one year of the date of the loss alleged under the policy.
As discussed above, when a contract dispute arises, it is the court's role to enforce the agreement rather than to reform it (Grace at 565). In order to enforce the agreement, the court must construe it in accordance with the intent of the parties, the best evidence of which is the very contract itself and the terms contained therein (Greenfield at 569). Thus, "when the parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms" (Vermont Teddy Bear Co. at 475 [internal quotation marks omitted]). Moreover, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield at 569). Accordingly, courts should refrain from interpreting agreements in a manner which implies something not specifically included by the parties, and "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (Vermont Teddy Bear Co., Inc. at 475). 
Additionally, it is well settled that principles generally applicable to contract interpretation apply equally to insurance contracts and insurance policies (Loblaw at 876; State at 154). To that end, the court has the responsibility of determining the rights and obligations of the [*6]parties under an insurance contract, using the specific language within the policy (Sanabria at 868; State at 671; Stasack at 866). Thus, when the language in an insurance policy is clear and unambiguous, the interpretation of said document and the determination of the rights and obligations of the parties is a question of law to be adjudicated by the court (Kenyon at 254; Stasack at 866; Stainless, Inc. at 32).
While generally, the statute of limitations for a cause of action for breach of contract is six years, accruing on the date of the breach alleged (Ely-Cruikshank Co., Inc. at 402; Matter of Carranza at 405; Goicoechea at 508) and the statute of limitations for a cause of action for fraud is also six years from accrual, two years after discovery of the fraud, or 2 years from when in the exercise of reasonable diligence, such fraud could have been discovered, and the fraud alleged stems from a contract, it accrues on the date the contract is executed, at which point, there is reliance on the representations made by the defendant (Carbon Capital Mgt., LLC at 939; Kanterakis at 816). However, it is equally well settled that parties to an insurance policy can agree to shorten the statute of limitations within which to commence a plenary action concerning any law suits arising from the policy (Brandyce at 71; D'Angelo at 931; Vinci at 600; Myers, Smith & Granady, Inc. at 312). Thus, any action commenced outside the statute of limitations agreed to by the parties must be dismissed (Farage at 471; Vinci at 600; Myers, Smith & Granady, Inc. at 312; D'Angelo at 931). 
Lastly, in order to render any alternate statute of limitations period applicable, the policy must "include distinct language demonstrating that such departure was intended by the parties" (Mercedes-Benz Fin. Services USA, LLC at 1184; Lobello at 1208-1209; Med. Facilities, Inc. at 693).
Here, since pursuant to CPLR § 304(a) "[a]n action is commenced by filing a summons and complaint or summons with notice," plaintiff commenced this action on July 3, 2024, when he filed his complaint. To the extent that the policy at issue here is for fire and other perils, despite the agreement by the parties to prescribe a one-year statute of limitations for suits arising from the policy, measured from the date of loss, pursuant to Insurance Law § 3404, the applicable statute of limitations was, in fact, two years from the date of loss, and supersedes the period prescribed by the policy (1303 Webster Ave. Realty Corp. at 230-231; Bersani at 460; Morgan Guar. Tr. Co. of New York at 73). Accordingly, because the date of loss, namely the fire was on April 28, 2022, and a claim for breach of an insurance policy accrues on the date of loss, meaning on the date the damage covered by the policy was sustained (Lichter Real Estate No. Three, L.L.C. at 366; Roberts at 807; D'Angelo at 931; Morgan Guar. Tr. Co. of New York at 73; Margulies at 700), this action could be commenced no later than two years from that date, namely on or about April 28, 2024. Since defendant's documentary evidence establishes that this action was not commenced until almost three months thereafter, it is time-barred. Thus, defendant conclusively establishes its defense to this action and dismissal of the complaint is warented pursuant to CPLR § 3211(a)(1).
Nothing urged by plaintiff is sufficient to warrant denial of the instant motion. 
While it is true, as urged, that where the terms of an insurance policy are ambiguous with respect to the event that triggers a truncated statute of limitations, the shortened statute of limitations is not applicable (Mercedes-Benz Fin. Services USA, LLC at 1184; Lobello at 1208-1209; Med. Facilities, Inc. at 693), here, the policy expressly states that any action must be [*7]commenced within a year of the date of loss, such date, when read in the context of the policy, means, as prescribed by prevailing law, the date of the instant fire (Lichter Real Estate No. Three, L.L.C. at 366; Roberts at 807; D'Angelo at 931; Morgan Guar. Tr. Co. of New York at 73; Margulies at 700). To be sure, while the policy does not define date of loss, to the extent that the policy, in relation to both dwelling and personal property coverage, states that it covers "direct loss . . . only if that loss is physical loss to property," it is clear that the date of loss referenced in section 11 is that prescribed by law, namely the date of the event giving rise to coverage under the policy, i.e., the date 703 was damaged in a fire, such that plaintiff sustained a physical loss to portions of 703.
Lastly, plaintiff's argument that dismissal is unjust because under the terms of the policy the one year statute of limitations would have only given him two and one half months to bring this action after defendant denied his claim, is specious. Again, pursuant to Insurance Law § 3404, the statute of limitations in the instant policy was superseded and increased to two years after the date of loss. Thus, as noted above, plaintiff had until April 28, 2024 to begin this action, more than one year after February 2, 2023, the date defendant denied the instant claim.
Accordingly, the instant motion is granted. It is hereby
ORDERED that the complaint be dismissed with prejudice. It is further
ORDERED that defendant serve a copy of this Order and with Notice of Entry upon all plaintiff within thirty days (30) hereof.
This constitutes this Court's decision and Order.
Dated : February 13, 2025
Bronx, New York
HON. FIDEL E. GOMEZ, JSC